UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  21-CR-14034-RLR

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

BILLY JOE GANN,
    Defendant.
_____/

# DEFENDANT'S SENTENCING MEMORANDUM AND VARIANCE MOTION FOR 240-MONTH SENTENCE

When Billy Joe Gann was five years old, his maternal uncle, Bobby Smith, Jr. molested him. Bobby was about 10 years older and lived with Billy Joe's grandparents in Frostproof, Florida. Frostproof is a small town in central Florida, about an hour from Disney World. In the summer, Billy Joe would visit for about a month, and he would sleep in his uncle's bedroom. [PSR ¶ 67]. Billy Joe never told anyone about what happened to him. [PSR ¶ 67].

Bobby tried to penetrate Billy Joe, but it hurt and he would cry too loudly. [PSR ¶ 67]. Instead, Bobby would rub their penises together or stick his penis in between Billy Joe's legs and move back and forth. Some nights, Billy Joe would wake up and his pillow would be wet or he would feel something sticky on his face. Bobby would say he was drooling in his sleep and tell him to go back to bed. At the time, Billy Joe believed him, but now he knows he was not drooling; it was the aftermath.

Now Billy Joe Gann stands before this Court for sentencing because he took pictures and video of himself touching his girlfriend's autistic daughter while she was sleeping. She was only slightly older than he was when his uncle touched him while he was sleeping. [PSR ¶ 8]. Online, he used the name "***bobby***1james" and sent those images to someone who turned out to be an undercover officer. [PSR ¶¶ 8-12, 15].

At sentencing, Dr. Heather Holmes will share her thoughts about why Billy Joe engaged in this behavior and discuss what this Court can do to decrease the likelihood he will reoffend in the future. Dr. Holmes is a licensed clinical and forensic psychologist with significant expertise in assessing, diagnosing, and treating sexual offenders. In evaluating Billy Joe, she found a broken and remorseful man whose chaotic childhood, sexual and physical abuse, and lack of appropriate mental health treatment likely contributed to his criminal conduct here. While her testimony will not excuse his behavior, it may help to explain it.

Billy Joe asks this Court consider the testimony in deciding how much time he must serve in prison before he spends the rest of his life as a sexual offender, likely on supervised release. He hopes this Court will show him mercy and sentence him well below the statutory maximum the Sentencing Guidelines suggest he receive. Either way, he just wishes he knew how he got to this point in his life. He says he will never do anything like this again and he wants help. [PSR ¶ 77, 81]. He knows what he did was wrong and regrets his actions and hopes this Court will find two decades sufficient. [PSR ¶¶ 1, 33].

**A. Billy Joe is more than just this case.**

Billy Joe Gann was born in Bartow, Florida, but his mother, Caroline Dillard, raised him in Alabama. [PSR ¶ 70]. Like Billy Joe, she does not understand how her son could have done the things he did in this case. [PSR ¶ 76]. It just is not in his character.

Growing up, his home was hectic. He had two biological brothers, Joshua and Jessie, two adopted siblings, Aranda and Jacob, and his mother had taken custody of two more children, Tyler and Tristan. [PSR ¶¶ 59-60]. They all lived in the same house in Alabama and Billy Joe was the oldest. [PSR ¶ 60]. Because she worked two jobs, his mother relied on him to help care for the other children. *See* Ex. "A" (letter from Caroline Dillard). Billy Joe was a good role model who always protected them, took care of them when they were sick, and taught them the things a parent should have been teaching them, like how to ride bikes and work on cars. Ex. "A." He even helped them build a tree house. Ex. "A."

In contrast, Billy Joe's father was not around when he was a child, and even refused to pay child support. Instead, the most memorable man in his life then was Dwayne Phillips. His mother married Dwayne when Billy Joe was seven years old and divorced him four years later. [PSR ¶ 62]. He was an abusive drunk who did not like Billy Joe and took his frustrations out on him. [PSR ¶ 62]. Dwayne would beat him with a leather belt, and, one time, he dragged Billy Joe out of bed and brought him to a nearby creek where he threatened to kill him. [PSR ¶ 62]. Billy Joe never told anyone how bad it was – but it was bad. [PSR ¶ 62].

School was no better. [PSR ¶ 80]. Although there had been some discussion early on about placing him in special education classes, he remained in regular classes. The work was too difficult for him, and by the eighth grade, he had stopped completing his assignments. Billy Joe remembers the school holding him back that year, and by the middle of ninth grade, he had dropped out of school entirely. [PSR ¶ 82]. His mother remembers he left after some boys had beaten him up in the music room and the school wanted Billy Joe to pay for the ancillary damage. [PSR ¶ 82]. She chose to remove him from school instead and then, rather than placing him in a different school, she sent him to live with his father – the first relationship he ever had with the man. [PSR ¶ 70, 82]. Rather than reenroll him, his father decided to teach his son how to become a diesel mechanic. [PSR ¶ 66]. Two years later, at the age of 16, Billy Joe moved out on his own. [PSR ¶ 66]. He never returned to school. [PSR ¶ 66].

Around the time he left school, the trauma of all the chaos and abuse he had faced began to show in other ways. Thoughts of suicide began – Billy Joe describes them as voices encouraging him to kill himself, voices he still hears – and he turned to substance abuse for relief. [PSR ¶ 75]. He started drinking 12-packs of beer on weekends and smoked marijuana daily when he was 14. [PSR ¶78-79]. At 16, he abused hydrocodone and morphine pills. [PSR ¶ 80]. He continued abusing substances into adulthood and, in 2016, his now-former wife called law enforcement to Baker Act him because he threatened to kill himself. [PSR ¶ 75]. His mother recalls another incident when Billy Joe's wife found him in a scalding hot tub of water

in the middle of the night. [PSR ¶ 76]. She believes her son has been depressed for many years. [PSR ¶ 76]. Despite all he has faced, besides the Baker Act and some counseling in school, he has never undergone formal treatment. He wants that help to figure out how he got here and how to keep his head straight.

### B. The sentence recommended by the Guidelines is not proportional.

In this case, the Sentencing Guidelines call for a sentence of 600 months, the maximum allowable for the offenses to which Mr. Gann has pled guilty. [PSR ¶ 101]. Yet, through the Sentencing Guidelines, Congress has made clear its goal to distinguish between the least and worst offenders – a goal the guidelines simply fail to achieve in child pornography cases. *See* U.S.S.G. § 1A1.3 (explaining the Sentencing Guidelines seek to promote "proportionality in sentencing" for offenders convicted of "criminal conduct of differing severity"); *see also United States v. Jacob*, 631 F.Supp.2d 1099, 1114-15 (N.D. Iowa 2009).

The Guidelines fail because they routinely recommend sentences near or at the statutory maximum regardless of the severity of the conduct. For example, a 360-month sentence was appropriate for a defendant who raped, sodomized, and sexually tortured more than fifty young girls between 4-6 years old for more than 5 years, recorded their defilement and humiliation, and then distributed those recordings online. *United States v. Irey*, 612 F.3d 1160, 1166-68 (2010). The images depicted the defendant engaging in oral, vaginal, and anal intercourse with toddlers, tying them up with rope and duct tape, writing vulgar language on their bodies, and inserting plastic glow sticks, dildos, cockroaches and candy into their vaginal cavities, all while

5

he smiled and posed with them as though they were trophies. *Id*. Another defendant who also received a 360-month sentence had penetrated his stepdaughter from the time she was eleven until she was twenty-seven, recording almost 250 videos of the abuse. *United States v. Dean*, 635 F.3d 1200, 1202 (11th Cir. 2011). The abuse began with digital and oral vaginal penetration while she slept, but progressed to include vaginal sex with himself and other men, violent physical abuse he refused to cease until she cried and begged him to stop, and threats to kill her, her mother and her husband if she did not comply. *Id*. The victim required three rectal surgeries to repair damage he did to her during these encounters. *Id*.

Nor are *Irey* or *Dean* outliers – others convicted of conduct more egregious than Billy Joe's also received 360-month sentences. *See United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019) (imposing a 360-month sentence on a defendant who sexually abused his granddaughters, ages 9 and 11, for an entire year, vaginally penetrating the 11-year old with a vibrator); *United States v. Herrera*, case no. 20-CR-20107-CMA (sentencing defendant who anally and orally penetrated his 11 and 12 year old nieces with his penis over several years and also abused a third niece starting when she was seven years old to 360 months).

**C. Sentencing should also be appropriate to the mitigation.**

Recently, this Court and Judge Middlebrooks had occasion to sentence defendants convicted of conduct more similar to Mr. Gann's conduct. In *United States v. Torrie Austin*, case no. 19-CR-14016-RLR, the defendant admitted producing eight videos of himself sexually abusing his 11-year old stepdaughter in a manner very

6

similar to what Mr. Gann did here – exposing her genitalia while she was sleeping. [DE 48, 49]. While the conduct was similar, the mitigation was not. The defendant there attempted to blame his actions on his sexual addiction and cocaine usage, and this Court sentenced him to 360 months.

By contrast, in *United States v. Tonya Bagley*, case no. 20-CR-80069-DMM, the conduct was similar, but the mitigation was compelling. Ms. Bagley, age 41, photographed herself performing oral sex on her own six-year old son at the direction of a man she met online, with whom she voluntarily engaged in a dominant-submissive sexual relationship. Like Mr. Gann, and unlike Mr. Austin, she suffered from significant mental health issues, including suicidal ideations and posttraumatic stress disorder, likely from the physical and sexual abuse she suffered as a child. Judge Middlebrooks sentenced Ms. Bagley to the same 240-month sentence Mr. Gann requests here.

### D. Mercy and justice must guide the Court's sentencing decision.

Abraham Lincoln once said, "mercy bears richer fruits than strict justice."[1] While "[m]ercy is seldom included on the list of 'traditional' rationales for sentencing," section 3553 evinces Congress' intent – this Court should impose the "lowest possible penalty consistent with the goals of sentencing." *United States v Blarek*, 7 F.Supp.2d 192, 210 (E.D.N.Y. 1998); *See also* 18 U.S.C. §3553(a). "The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the

---

[1] The quote is widely attributed to Abraham Lincoln, possibly from a speech he made in Washington, D.C., 1865.

7

human fabric and spirit. Lenity is often the desirable route." *Id*.

Indeed, "[i]n deciding what sentence will be "sufficient, but not greater than necessary" to further the goals of punishment, a sentencing judge must have a generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." *United States v. Singh*, 877 F.3d 107, 121 (2d Cir. 2017)(internal quotation marks and citations omitted). Mr. Gann is undoubtedly in trouble for the things he has done, but he is also in pain for the things that have happened to him. He hopes this Court can impose a sentence that considers both.

WHEREFORE, the Defendant, BILLY JOE GANN, respectfully requests this Court grant this motion for a downward variance and sentence him to 240 months in the Bureau of Prisons.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*s/Scott Berry*
Scott Berry, B.C.S.
Assistant Federal Public Defender
Attorney for Defendant
Bar Number: 0525561
450 South Australian Avenue
Suite 500
West Palm Beach, Florida 33401
Phone: (561) 833-6288
Email: scott_berry@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ <i>Scott Berry</i><br>
Scott Berry